[Cite as *In Re J.T.*, 2018-Ohio-3331.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                    |     |                          |
|--------------------|-----|--------------------------|
|                    |     | JUDGES:                  |
| IN RE: J.T.        | :   | Hon. John W. Wise, P.J.  |
|                    | :   | Hon. W. Scott Gwin, J.   |
|                    | :   | Hon. William B. Hoffman, J. |
|                    | :   |                          |
|                    | :   |                          |
|                    | :   | Case No. 18-CA-35        |
|                    | :   |                          |
|                    | :   |                          |
|                    | :   | OPINION                  |


CHARACTER OF PROCEEDING:     Civil appeal from the Richland County Court
                             of Common Pleas, Juvenile Division, Case
                             No. 2017-DEP-00085

JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      August 17, 2018

APPEARANCES:

For-Appellee                 For-Appellant
No Appearance                Darin Avery
Richland County Children Services   105 Sturges Avenue
731 Scholl Road              Mansfield, OH 44903
Mansfield, OH 44907

*Gwin, J.,*

{¶1} Appellant-mother, B.S.[1], appeals the finding of dependency of her minor child J.T. entered on March 16, 2018 in the Richland County Court of Common Pleas, Juvenile Court Division. Appellee the Richland County Children Services Board ["RCCSB"] did not file a brief in this case.

*Preface*

{¶2} Appellee RCCSB did not file a brief in this matter. Pursuant to App.R. 18(C), in determining the appeal, we may accept Appellant's statement of the facts and issues as correct, and reverse the judgment if Appellant's brief reasonably appears to sustain such action. *See State v. S.H.*, 5th Dist. Guernsey No. 10CA000023, 2010-Ohio-5741, ¶17; *State v. McLeod,* 5th Dist. Knox No. 2011-CA-22, 2012-Ohio-1797, ¶2. Therefore, we presume the validity of Appellant's statement of facts and issues.

{¶3} We note, however, that a finding of delinquency by a juvenile court, unaccompanied by any disposition thereof, is not a final appealable order. *In Re: Sekulich*, 65 Ohio St.2d 13, 14, 417 N.E.2d 1014(1981). The Dispositional Hearings took place in this case on November 8, 2017, January 12, 2018 and March 22, 2018. *See, Magistrate's Decision*, filed Apr. 9, 2018 at 1[Docket Number 83]. Appellant's Notice of Appeal was filed in this case on April 11, 2018. Therefore, because there is a final dispositional order in this case, the order is a final appealable order.

{¶4} Appellant's Notice of Appeal in this case references only the March 16, 2018 decision of the trial court affirming the magistrate's findings of fact and conclusions of law

---

[1] For purposes of anonymity, initials designate appellant's name only. See, e.g., *In re C.C.,* Franklin App. No. 07-AP-993, 2008-Ohio-2803 at ¶ 1, n.1. Counsel should adhere to Rule 45(D) of the Rules of Supt. for Courts of Ohio concerning disclosure of personal identifiers.

and adopting the magistrate's decision concerning the dismissal and dependency. We further note that Appellant only requested that the adjudicatory hearings be transcribed in his Motion for a Transcript at State's Expense filed April 18, 2018. Accordingly, Appellant does not appeal the trial court's final dispositional order concerning J.T.

*Facts and Procedural History*

**{¶5}** RCCSB filed complaints on May 4, 2017, alleging D.T. and his sibling, M.T., to be abused and dependent children, and their other siblings, R.T., J.T., S.K., and T.K., to be dependent children due to concerns of physical abuse by mother's paramour stemming from an incident on January 17, 2017.

**{¶6}** Following that incident, mother had agreed to a voluntary safety plan placing her children with her sister, the grandmother of two of the children, and a friend. On or about May 12, 2017, mother gathered her children from those voluntary placements and moved to Kentucky with the father of four of the children.

**{¶7}** On May 18, 2017, the trial court issued an ex parte order placing the children in the temporary custody of RCCSB in response to a motion alleging that mother had fled. On May 19, 2017, the trial court held a hearing at which it heard no evidence and on May 22, 2017, issued an order continuing the previous order of temporary custody to RCCSB. The court in that entry found that RCCSB had made "barely and marginally reasonable" efforts to reunify the children with mother. On May 20, 2017, representatives of RCCSB went to Kentucky seeking the children, and Appellant voluntarily surrendered the children to them. Appellant was served with the complaint on May 20, 2017, by residential service at her home in Mansfield, Ohio.

**{¶8}** On July 21, 2017, the magistrate heard testimony from Detective David Scheurer of the Mansfield City Police Department; S. K., maternal aunt; N. H., family friend and temporary caregiver; and Y. G. of Encompass Counseling Services.

**{¶9}** On August 29, 2017, and October 6, 2017, Appellant moved for dismissal for failure to follow the time requirements of R.C. 2151.35(B).

**{¶10}** On August 31, 2017, the magistrate heard testimony from T. G., counselor at Malabar Middle School; and B.P., A.H., and K.K., RCCSB caseworkers.

**{¶11}** On October 12, the magistrate heard testimony from Appellant, called to testify by her counsel.

**{¶12}** On August 31, 2017, the magistrate, with the consent of all parties, admitted into evidence RCCSB Exhibits A-1 through A-15 and B-1 through B-8, each being photographs of the minor child and siblings. On October 12, 2017, with the consent of all parties, the magistrate admitted into evidence RCCSB Exhibit C, being medical records regarding Appellant from Urgent Care dated January 2, 2017. After the presentation of evidence, the magistrate heard closing arguments from the parties.

**{¶13}** The following facts were found by the trial court based upon the hearings.

**{¶14}** J.T. (DOB July 20, 2010) has resided with Appellant for his life prior to January 17, 2017. His father, J. T. also has resided with J.T. and Appellant for substantial periods of the child's life.

**{¶15}** On or about January 16, 2017, Appellant's live-in paramour, W. D. beat J.T.'s brother, D.T., inflicting significant injuries and resulting in D.T.'s hospitalization. Appellant sent D.T. to school on January 17, 2017, taking no notice of his injuries. A counselor and others at Malabar Middle School observed D.T.'s condition, including two black eyes and

numerous scratches on his neck and, with the help of Caseworker B.P. arranged for appropriate medical attention.

{¶16} Shortly thereafter, Caseworker B.P. and Detective Scheurer arrived at Appellant's home. Detective Scheurer arrested W.D. for domestic violence; and Caseworker B.P. advised Appellant of D.T.'s injuries and hospitalization. D.T. initially told those concerned that he was injured in a fight with M.T., a lie that W.D. instructed him to tell. W.D. had instructed M.T. to engage in violence with another brother to make it appear M.T. had been in a fight. In the process, M.T. suffered minor injuries that did not require medical treatment. *See,* RCCSB Exhibits B1 – B8.

{¶17} Appellant expressed concern over W.D.'s arrest and doubt that he had injured D.T.; however, her reaction to D.T.'s injuries, even after she observed them, was unusually muted. She claims that her illness limited her reaction to the abuse of her child and the injuries he suffered; however, the medical report from Urgent Care of January 17, 2017 (RCCSB Exhibit C) indicates Appellant only suffered from a sinus infection.

{¶18} On January 17, 2017, RCCSB arranged placement of J.T. and his siblings with S.K., N.H., a grandmother, and another individual pending further investigation. On or about May 13, 2017, J.T. gathered J.T. and his siblings from their various placements, ostensibly for a Mother's Day visit, although RCCSB did not sanction such a visit and was not informed of it.

{¶19} On May 13 or 14, 2017, B.S. took control of all of the children and fled the State of Ohio for the State of Kentucky. Appellant claimed that the flight was a spur-of-the-moment decision based on concerns regarding her children's care in temporary placements; however, the circumstances surrounding her departure, including renting a

U-Haul truck, arranging for a gentleman friend to drive it, obtaining the children's birth certificates several days in advance, and packing up all of her household possessions all indicate that her flight was planned in advance. B.S. indicated that she slipped away while J.T. was sleeping. However, J.T.'s participation in gathering the children, the extent of Appellant's preparations for her departure, and the circumstances leading to Appellant's reunion with J.T. in Kentucky indicate otherwise.

{¶20} On May 18, 2017, J.T. and his siblings were placed in the temporary custody of RCCSB by Magistrate's Temporary Order. Shortly thereafter, RCCSB with the assistance of S.K., N.H. and Kentucky law enforcement officials removed the children from the care of Appellant and J.T. and returned them to safe placements Richland County, Ohio.

{¶21} The testimony of S.K., N.H. and the various Children Services caseworkers shows a history of abuse, inappropriate discipline and other rough treatment of J.T. and his siblings by W.D., by Appellant's previous paramour, B. K., father of two of J.T.'s half siblings, and others. These included severe discipline for minor offenses; tattoos administered by W.D. without Appellant's consent; various police calls, including B.K.'s arrest for domestic violence when he beat two of her sons with a belt; and Appellant's previous flight to Georgia to escape an abusive relationship. Y.G. of Encompass Counseling Services testified as to the behavioral problems of D.T. and his brothers and of the "environmental stressors' in their home which could produce such problems.

{¶22} The Richland County Court of Common Pleas, Juvenile Division, in its October 25, 2017, entry, overruled Appellant's motions to dismiss and found all six children dependent and M.T. and D.T. abused.

**{¶23}** Appellant timely objected to the magistrate's decisions regarding dependency, abuse, and mother's motion to dismiss. The trial court overruled Appellant's objections by entry dated March 16, 2018.

*Assignment of Errors*

**{¶24}** Appellant raises five assignments of error,

**{¶25}** "I. THE COURT SHOULD HAVE DISMISSED THE CASE ON MOTHER'S MOTION IN ACCORDANCE WITH ORC 2151.35(B).

**{¶26}** "II. THE TRIAL COURT ERRED IN FINDING ABUSE UNDER 2151.031(C) ORC 2151.031(D) OF TWO OF THE MINOR CHILDREN.

**{¶27}** "III. THE TRIAL COURT ERRED IN FINDING DEPENDENCY OF ANY OF THE CHILDREN.

**{¶28}** "IV. THE TRIAL COURT ERRED IN REMOVING THE CHILDREN FROM THEIR HOME AND CONTINUING THE REMOVAL OF THEM FROM THEIR HOME.

**{¶29}** "V. ORC 2151.031(C) IS UNCONSTITUTIONALLY OVER BROAD AND UNCONSTITUTIONAL AS APPLIED."

I.

**{¶30}** In the First Assignment of Error, Appellant contends the Court should have dismissed the case on Appellant's motion in accordance with RC 2151.35(B)(1).

**STANDARD OF APPELLATE REVIEW.**

**{¶31}** Appellant's argument centers on an issue of law, not the discretion of the trial court. In other words, Appellants contends that R.C. 2151.35(B)(1) mandates dismissal where a trial court fails to hold a dispositional hearing within 90-days of the filing of a complaint in a dependency action.

{¶32} "'When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate. *See Swartzentruber v. Orrville Grace Brethren Church,* 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619, ¶ 6; *Huntsman v. Aultman Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, ¶ 50.' *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13." *State v. Fugate,* 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶6. Because the assignment of error involves the interpretation of a statute, which is a question of law, we review the trial court's decision de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13; *Accord, State v. Pariag,* 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9; *Hurt v. Liberty Township, Delaware County, OH,* 5th Dist. Delaware No. 17 CAI 05 0031, 2017-Ohio-7820, ¶ 31.

## ISSUE FOR APPEAL.

*1. Whether under Ohio law a trial court is required to dismiss a dependency case when the trial court fails to hold the dispositional hearing within 90-days of the filing of the Complaint.*

{¶33} R.C. 2151.35(B)(1) provides in relevant part as follows,

If the dispositional hearing is not held within the period of time required by this division, *the court, on its own motion or the motion of any party or the guardian ad litem of the child, shall dismiss the complaint without prejudice.*

Emphasis added. See, also, Juv.R. 29(A), with virtually identical language. Appellant's First Assignment of Error maintains that the statutory provisions of R.C. 2151.35 and

Juv.R. 34(A) mandates that the trial court dismiss a complaint of abuse, neglect or dependency, when the dispositional hearing on the complaint is held later than ninety days after the filing of the complaint. Appellant says that the time limit is jurisdictional and cannot be waived.

{¶34} This Court has reversed cases on these grounds multiple times. *In re Chambers*, 5th Dist. Tuscarawas No. 2000AP080058, 2001 WL 278156 (Mar 15, 2001) (holding that the language of R.C. 2151.35(B)(1) is mandatory and cannot be waived by a party's failure to object); *Matter of Grimm*, 5th Dist. Tuscarawas No. CA-93-AP-060042, 1993 WL 544362(Dec. 16, 1993).

{¶35} We note that R.C. 2151.35(B)(1) permits the court to dismiss a case for failure to hold the dispositional hearing within ninety days even if no party makes a motion. Accordingly, it would seem that an analysis of a waiver of the time requirement for failure of a party to raise the issue would be erroneous because the court itself can dismiss the case in spite of the party's failure to raise the issue. In other words, a motion by a party to dismiss the case is not a prerequisite to the court's power to dismiss the case for failure to comply with the statute.

{¶36} That being said, we revisit the Ohio Supreme Court's decision in *In re Davis*, 84 Ohio St.3d 520, 705 N.E.2d 1219(1999). In that case, the issue was whether R.C. 2151.35(B)(3), which states that the court shall issue a judgment entry within seven days after the dispositional hearing, is jurisdictional. The Court stated that the word "shall" is usually mandatory, meaning that noncompliance results in a void judgment. Id. at 522, 705 N.E.2d 1219. However, the Court observed,

But, even with "shall" as the operative verb, a statutory time provision may be directory. "As a general rule, a statute which provides a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure." Id. at 472, 32 O.O. at 544, 66 N.E.2d at 534. This is so "unless the nature of the act to be performed or the phraseology of the statute or of other statutes relating to the same subject-matter is such that the designation of time must be considered a limitation upon the power of the officer." *State ex rel. Smith v. Barnell* (1924), 109 Ohio St. 246, 255, 142 N.E. 611, 613.

The statute reviewed here fits the general *Farrar* [146 Ohio St. 467, 471-472, 66 N.E.2d 531 (1946)] rule for construing that statute as directory; it is a time restriction on the performance of an official duty. And, the language and purpose of the provision do not trigger the *Barnell* exception to this general rule because R.C. 2151.35 does not include any expression of intent to restrict the jurisdiction of the court for untimeliness.

84 Ohio St.3d at 522, 705 N.E.2d 1219. The Court is *Davis* concluded,

Finding the provision directory makes sense from a practical standpoint as well. If we decided that the time constraint is mandatory and that juvenile courts therefore lack jurisdiction to decide these cases from the eighth day following submission of the issue, we would defeat the very purposes the time limit was designed to protect. If there were jurisdictional consequences, a missed deadline would require either that the child be

returned to a potentially risky home situation, or that a new complaint be filed and the process begun anew, delaying the final resolution of the issue even further. Such consequences would not serve the interests of children, who are too often relegated to temporary custody for too long.

In light of the rule stated in *Farrar* and the consequences that would result otherwise, then, we conclude that the seven-day time limit set forth in R.C. 2151.35(B)(3) is directory, not mandatory, and failure to comply with it will not deprive a court of jurisdiction to decide the issue.

84 Ohio St.3d at 522 - 523, 705 N.E.2d 1219.

**{¶37}** We cannot help but note that the result of dismissing the case at bar for failure to meet the 90-day deadline would require either that the child be returned to a potentially risky home situation, or that a new complaint be filed and the process begun anew, delaying the final resolution of the issue even further. Such consequences would not serve the interests of children.

**{¶38}** The complaint was filed May 5, 2017. By Magistrate's Order filed June 8, 2017, the matter was scheduled for a pre-trial on June 29, 2017 and trial on July 21, 2017. The adjudicatory hearing was commenced on July 21, 2017. Additional hearings took place on August 31, 2017 and the adjudicatory hearing concluded on October 12, 2017. At the conclusion of the adjudicatory hearing on October 12, 2017, Appellant's attorney requested that the dispositional hearing be continued. 1T. at 302-303. The dispositional hearing was commenced November 8, 2017. The Ohio Supreme Court further noted,

Although we hold that the seven-day time limit is directory rather than mandatory, such a finding does not render the provision meaningless.

Where a juvenile court delays its ruling beyond the seven days allowed by R.C. 2151.35(B)(3), the time constraint in the statute serves as justification for seeking a writ of procedendo.

A petition for a writ of procedendo "is appropriate when a court has either refused to render a judgment or has unnecessarily delayed proceeding to judgment." *State ex rel. Miley v. Parrott* (1996), 77 Ohio St.3d 64, 65, 671 N.E.2d 24, 26. "'[A]n inferior court's refusal or failure to timely dispose of a pending action is the ill a writ of procedendo is designed to remedy.'" *State ex rel. Dehler v. Sutula* (1995), 74 Ohio St.3d 33, 35, 656 N.E.2d 332, 333, *quoting State ex rel. Levin v. Sheffield Lake* (1994), 70 Ohio St.3d 104, 110, 637 N.E.2d 319, 324. The seven-day limit set forth in R.C. 2151.35(B)(3) defines what is and is not a "timely" disposal of a permanent custody action, lending justification to any petition filed after the expiration of that period.

\* \* \*

Given the availability of this avenue for relief from prejudicial delay, however, it follows that any party who has not petitioned for a writ of procedendo is estopped from complaining on appeal that delay by the juvenile court in excess of the seven days allowed by R.C. 2151.35(B)(3) prejudiced that party or violated that party's due process rights. At any reasonable time following the expiration of seven days, appellants could have forced the court to act by seeking a writ of procedendo. Appellants failed to do this. Their failure to avail themselves of this remedy precludes them from now claiming that they suffered from the delay.

84 Ohio St.3d at 523 - 524, 705 N.E.2d 1219.  A finding of delinquency by a juvenile court, unaccompanied by any disposition thereof, is not a final appealable order.  *In Re: Sekulich*, 65 Ohio St.2d 13, 14, 417 N.E.2d 1014(1981).  The procedure outline by the Supreme Court in *Davis* would not require an Appellant to wait until *after the depositional hearing has taken place* to appeal the trial court's ruling concerning the delay.

{**¶39**} Going forward we feel it is time to join the majority of jurisdictions and hold the statutory time for holding the dispositional hearing is not jurisdictional.  *In re Matsko*, 11th Dist. Lake Nos.2006–L–230 & 2006–L–231, 2007–Ohio–2060, ¶ 16; *In re Jones*, 9th Dist. Summit No. 20306, 2001 Ohio App. LEXIS 1947, *8 (May 2, 2001); *In re Kutzli*, 71 Ohio App.3d 843, 595 N.E.2d 1026 (3d Dist.1991); *In re Bailey*, 6th Dist. Lucas No. L–96–363, 1998 Ohio App. LEXIS 1571, *5 (Apr. 17, 1998); *In re N.B.,* 12th Dist. Butler Nos. CA95–02–031, CA95–03–056 & CA95–06–017, 1996 WL 174546 (Apr. 15, 1996); In re Kimble, 7th Dist. Harrison No. 99 517 CA, 2002–Ohio–2409, ¶ 21.

{**¶40**} The case at bar is not a case where the case languished; rather hearings were scheduled and conducted.  The court had six separate cases, one for each child. Several different fathers were also involved.  Appellant cites no actual prejudice from the delay.  The Appellant's first motion to dismiss was filed August 29, 2017.  The trial court had not yet concluded the adjudicatory hearing on that date. That hearing was concluded on October 12, 2017 and the dispositional hearing was scheduled for November 8, 2017, twenty-seven days later.  The juvenile court was willing to commence the dispositional phase at the conclusion of the October 12, 2017 adjudicatory hearing; however, the dispositional hearing was continued at Appellant's request.  (1T. at 302-303).

{¶41} Finally, Appellant has not been permanently deprived of her parental rights as to any of her children. Both Appellant and RCCSB remain free at any time to petition the court to return the children to Appellant and terminate or modify RCCSB's involvement with Appellant if the circumstances so warrant the change.

{¶42} To dismiss the case at this time would require either that the child be returned to a potentially risky home situation, or that a new complaint be filed and the process begun anew, delaying the final resolution of the issue even further. Such consequences would not serve the interests of children. It would seem to this Court that a review hearing in the juvenile court would accomplish the same purpose of potentially returning the children to the Appellant if the present circumstances warrant the change.

{¶43} Appellant's First Assignment of Error is overruled.

II.

{¶44} In the second Assignment of Error, Appellant argues that the trial court erred in finding D.T. and M.T. to be abused children.

{¶45} The other children, D.T. and M.T. have each filed a separate appeal. The issue of the trial court's findings with respect to D.T. and M.T. shall be dealt with in that specific child's case.

{¶46} Because the trial court made no finding of abuse with respect to J.T. and it is only J.T.'s appeal before this Court in the above-captioned case, we find the issue of the trial court's findings with respect to any other child is not properly before the Court in J.T.'s appeal.

{¶47} Appellant's Second Assignment of Error is overruled.

III.

{¶48} In her Third Assignment of Error, Appellant argues that the trial court erred in finding J.T. to be a "dependent child."

{¶49} R.C. 2151.04 provides,

As used in this chapter, "dependent child" means any child:

(A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;

(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;

(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;

(D) To whom both of the following apply:

(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

**STANDARD OF APPELLATE REVIEW.**

**{¶50}** In an adjudicatory hearing regarding a claim of dependency, neglect and/or abuse, the requisite burden of proof is by clear and convincing evidence.  Juv.R. 29(E)(4).  The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal."  *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

**{¶51}** The Ohio Supreme Court has delineated our standard of review as follows,

Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.  *See Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14.

*Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954).  In *Cross*, the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts.  The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of

facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

ISSUE FOR APPEAL.

*Whether ample evidence is contained in the record to provide "in the mind of the trier of facts a firm belief or conviction that J.T. was a dependent child as defined by R.C. 2151.04.*

{¶52} A finding of dependency under R.C. 2151.04 focuses on whether the child is receiving proper care and support. *In re Walling,* 1st Dist. No. C-050646, 2006-Ohio-810, ¶ 16 citing, *In re Bibb*, 70 Ohio App.2d 117, 120, 435 N.E.2d 96(1st Dist. 1980). Therefore, the determination must be based on the condition or environment of the child, not the fault of the parents. *In re Bishop*, 36 Ohio App.3d 123, 124, 521 N.E.2d 838(5th Dist. 1987); *In re Birchfield,* 51 Ohio App.3d 148, 156, 555 N.E.2d 325(4th Dist. 1988). "That being said, a court may consider a parent's conduct insofar as it forms part of the child's environment. See *In re Burrell*, 58 Ohio St.2d 37, 39,388 N.E.2d 738 (1979). The parent's conduct is significant if it is demonstrated to have an adverse impact on the child sufficient to warrant state intervention." *In re Ohm,* 4th Dist. 206-Ohio-Hocking No.

05CA1, 2005-Ohio-3500 at ¶ 21.  *See, also*, *In re: Colaner,* 166 Ohio App.3d 355, 360, 2006-Ohio-2404, 850 N.E.2d 794, 798 (5th Dist.), ¶ 26.

**{¶53}** Upon review of the record in this matter, we conclude the trial court's finding that the J.T. was dependent is supported by clear and convincing evidence.

**{¶54}** In the case at bar there is no dispute that W.D. beat D.T. Pictures of D.T.'s injuries were submitted into evidence RCCSB Exhibits A5 - A10; A15.  A counselor at D.T.'s school testified to observing the injuries.  1T. at 116. W.D. instructed R.T. to punch M.T. in the face so it would appear that M.T. and D.T. had been fighting.  1T. at 144.  M.T. sustained injuries in this fight to his cheek and forehead.  Id. Further, W.D. had given M.T. a tattoo.  1T. at 133.  There was no credible evidence presented that the injuries to M.T. were accidental.  Thus, the trial court's judgment rested on competent and credible evidence.

**{¶55}** Further, there was credible evidence presented that Appellant has had a history of relationships with men who have potentially abused her children.  1T. at 211-212; 217-218; 242-244; 254-255; 264-266; 267-269.

**{¶56}** Dependency must be supported by clear and convincing evidence.  R.C. 2151.35(A).  In addition, the determination as to whether a child is dependent must be made as of the date alleged in the complaint, not as of the date of the adjudicatory hearing.  R.C. 2151.23(A)(1) *legislatively overruling In re Kronjaeger*, 166 Ohio St. 172, 140 N.E.2d 773 (1957); *In re Alexander C.*, 164 Ohio App.3d 540, 2005–Ohio–6134, 843 N.E.2d 211 (6th Dist.); *In re Rowland*, 2d Dist. Montgomery No. 18429, 2001 WL 109182 (Feb. 9, 2001); and *In re Sims*, 13 Ohio App.3d 37, 468 N.E.2d 111 (12th Dist.1983); *In re D.J.,* 3rd Dist. Union Nos. 14-14-09, 14-14-10, 2014-Ohio-5204, ¶20.  If the date of the

hearing were to control, it would be possible for the parents to avoid juvenile court jurisdiction by temporarily correcting the neglectful conditions before the hearing date.

**{¶57}** An appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24. The trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

**{¶58}** Based upon the foregoing and the entire record in this matter we find the trial court's finding that J.T. was a "dependent child" is not against the sufficiency or the manifest weight of the evidence. To the contrary, the judge appears to have fairly and impartially decided that matter. The judge heard the witnesses, evaluated the evidence, and was convinced that J.T. was a "dependent child."

**{¶59}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves by clear and convincing evidence that J.T. was a "dependent child."

**{¶60}** Appellant's Third Assignment of Error is overruled.

IV.

**{¶61}** In the Fourth Assignment of Error, Appellant argues that the trial court erred in removing J.T. from the home and continuing the removal of him from their home.

**STANDARD OF APPELLATE REVIEW.**

**{¶62}** In an adjudicatory hearing regarding a claim of dependency, neglect and/or abuse, the requisite burden of proof is by clear and convincing evidence. Juv.R. 29(E)(4). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

ISSUE FOR APPEAL.

*Whether ample evidence is contained in the record to provide "in the mind of the trier of facts a firm belief or conviction" that RCCSB made reasonable efforts to prevent the removal of J.T. or make it possible for J.T. to return home.*

**{¶63}** In his October 25, 2017 Magistrate's Decision, the magistrate found,

> 5.    The Court finds by clear and convincing evidence and based on the evidence presented that reasonable efforts to maintain the minor

child in his home were not possible based on the emergent nature of the presenting problems herein; that Children Services has made reasonable efforts to return the child to his home through appropriate temporary placement, caseworker counseling, and service referrals structured to resolve the presenting problems herein; that it is not in the minor child's best interests to return to the home of a parent at this time; and that it is in the best interest of the minor child that he continue to reside out of the home or homes of his parents.

**{¶64}** R.C. 2151.419 specifically states,

If the agency removed the child from home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount.

**{¶65}** The evidence presented during the adjudicatory hearings established that Appellant voluntarily placed her children with caregivers in January 2017. The Complaint in this case was filed May 4, 2017. Prior to receiving service of the Complaint, Appellant conspired with J.T. to remove the children from the jurisdiction of the court.

**{¶66}** "In determining whether the agency made reasonable efforts [pursuant to R.C. 2151.419(A)(1) ] to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the

reasonableness standard under the statute." *In re Lewis*, 4th Dist. No. 03CA12, 2003–Ohio–5262, at ¶ 16. "'Reasonable efforts' does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible." Id. The foregoing reasoning, dealing with the extremely serious question of removing a parent's permanent custody, is yet more fully applicable in a temporary custody matter such as this instant, particularly in considering the issue of dependency at the time a complaint is filed. Based upon Appellant's actions, the trial court was justified in not returning J.T. to Appellant pending the adjudicatory hearings.

{¶67} As previously noted, the disposition of J.T. following the adjudicatory hearing has not been appealed. Appellant was free to argue during the dispositional phase for a return of J.T. Because Appellant's parental rights have not been terminated, both Appellant and RCCSB remain free to have J.T. retuned to Appellant's care upon review by the trial court.

{¶68} Under the facts of this case, Appellant's removal of the children from the jurisdiction of the Court made it unwise and impractical to return J.T. to Appellant pending an adjudicatory hearing to determine the safety of J.T. should he be returned to Appellant's care and custody.

{¶69} Appellant's Fourth Assignment of Error is overruled.

V.

{¶70} In her Fifth Assignment of Error Appellant raises a constitutional challenge that she did not raise in the trial court. Appellant attempts to argue that R.C. 2151.031(C) is unconstitutionally over broad and unconstitutional as applied. Specifically, Appellant

argues R.C. 2151.031(C) does not specify by whom an injury must be inflicted, when an injury must be inflicted, or with whose history an injury must be at variance.  Appellant further contends that, in this case, the court did not "afford [ ] every procedural and substantive protection the law allows [,]" because it relied on unreliable evidence and did not specifically state how the children fit 2151.031(C)'s definition of abuse.

{¶71} In *State v. Awan,* the Ohio Supreme Court noted,

The general rule is that "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."  *State v. Childs* (1968), 14 Ohio St.2d 56, 236 N.E.2d 545 [43 O.O.2d 119], paragraph three of the syllabus; *State v. Glaros* (1960), 170 Ohio St. 471, 166 N.E.2d 379 [11 O.O.2d 215], paragraph one of the syllabus; *State v. Lancaster* (1971), 25 Ohio St.2d 83, 267 N.E.2d 291 [54 O.O.2d 222], paragraph one of the syllabus; *State v. Williams* (1977), 51 Ohio St.2d 112, 117, 364 N.E.2d 1364 [5 O.O.3d 98].  Likewise, "[c]onstitutional rights may be lost as finally as any others by a failure to assert them at the proper time." *State v. Childs, supra*, 14 Ohio St.2d at 62, 236 N.E.2d 545, *citing State v. Davis* (1964), 1 Ohio St.2d 28, 203 N.E.2d 357 [30 O.O.2d 16]; *State, ex rel. Specht, v. Bd. of Edn.* (1981), 66 Ohio St.2d 178, 182, 420 N.E.2d 1004 [20 O.O.3d 191], *citing Clarington v. Althar* (1930), 122 Ohio St. 608, 174 N.E. 251, and *Toledo v. Gfell* (1958), 107 Ohio App. 93, 95, 156 N.E.2d 752 [7 O.O.2d 437].1 Accordingly, the question of the constitutionality of a

statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court. *See State v. Woodards* (1966), 6 Ohio St.2d 14, 215 N.E.2d 568 [35 O.O.2d 8]. This rule applies both to appellant's claim that the statute is unconstitutionally vague on its face and to his claim that the trial court interpreted the statute in such a way as to render the statute unconstitutionally vague. Both claims were apparent but yet not made at the trial court level.

22 Ohio St.3d 120, 122-123, 489 N.E.2d 277(1986). *Accord, In re T.K.,* 9th Dist. Wayne No. 03CA0006, 2003-Ohio-2634, ¶20 (finding the Court would not consider Appellant's constitutional argument where Appellant did not raise constitutional challenge to R.C. 2151.413(D)(1) in the trial court).

{¶72} We thus conclude that Appellant waived her argument that R.C. 2151.031(C) is unconstitutionally vague on its face by failing to raise it in the trial court. Appellant similarly waived her argument that the trial court engaged in an interpretation that rendered the statute unconstitutionally vague. *State v. Awan,* 22 Ohio St.3d at 123-124, 489 N.E.2d 277.

{¶73} Appellant's Fifth Assignment of Error is overruled.

{¶74} The judgment of the Richland County Court of Common Pleas, Juvenile Court Division is affirmed.

By Gwin, J.,

Wise, John, P.J., and

Hoffman, J., concur