[Cite as *In re T.J.*, 2018-Ohio-3639.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE:  T.J.                 :          APPEAL NOS. C-170584

                                           C-180002

                :                             C-180329

                :      TRIAL NO. F-16-1241X

                :            *O P I N I O N.*

Appeals From:  Hamilton County Juvenile Court

Judgments Appealed From Are:  Affirmed in C-170584 and C-180002; Appeal Dismissed in C-180329

Date of Judgment Entry on Appeal:  September 12, 2018

*Rebecca J. Allf Co., Ltd.*, and *Rebecca J. Allf*, for Appellant Mother,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Jackie O'Hara*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Laurie J. Hoppenjans*, Assistant Public Defender, for Appellee Guardian ad Litem.

**MYERS, Judge.**

{¶1}    Appellant mother has appealed from the juvenile court's entry granting temporary custody of her daughter T.J. to the Hamilton County Department of Job and Family Services ("HCJFS").

{¶2}    In four assignments of error, mother argues that the trial court erred in determining that T.J. was abused and dependent and in granting temporary custody of T.J. to HCJFS; that the trial court erred in overruling her motion to set aside the magistrate's order stating that an in camera hearing had been conducted; that the trial court erred by approving and incorporating a case plan; and that the trial court erred by dismissing various motions that mother had filed during the pendency of this action.

{¶3}    Finding no merit to mother's assignments of error, we affirm the trial court's judgments in the appeals numbered C-170584 and C-180002.  But we dismiss the appeal numbered C-180329 because mother has advanced no separate assignments of error in that appeal.

### Factual Background

{¶4}    HCJFS was granted an ex parte emergency order of custody of T.J. on May 9, 2016.  The following day, the agency filed a complaint seeking temporary custody, alleging that T.J. was neglected, abused, and dependent.  Following an adjudication hearing, a magistrate issued a decision on April 24, 2017, determining that T.J. was abused and dependent, but dismissing the allegation of neglect.  Mother filed objections to the magistrate's decision, which the trial court overruled.

{¶5} After conducting a dispositional hearing and an in camera interview with T.J., the magistrate issued a decision granting HCJFS's motion for temporary custody on July 31, 2017. Mother again filed objections to the magistrate's decision, which the trial court overruled.

### *Temporary Custody*

{¶6} In her first assignment of error, mother argues that the trial court erred in adopting the magistrate's decisions adjudicating T.J. abused and dependent and determining that it was in T.J.'s best interest to be placed in the temporary custody of HCJFS, because those decisions were against the manifest weight of the evidence.

{¶7} We first consider the trial court's determination that T.J. was an abused and dependent child. A determination that a child is abused or dependent must be supported by clear and convincing evidence. Juv.R. 29(E)(4); *In re Walling*, 1st Dist. Hamilton No. C-050646, 2006-Ohio-810, ¶ 15. Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Id.* As a reviewing court, we "must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof." *Id.*, quoting *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985); *In re T.K.*, 5th Dist. Richland No. 18-CA-37, 2018-Ohio-3333, ¶ 51.

{¶8} R.C. 2151.031 contains various classifications of abused children. In this case, the complaint alleged that T.J. was abused pursuant to R.C. 2151.031(B), (C), and (D), which provide as follows:

As used in this chapter, an "abused child" includes any child who:

* * *

(B) Is endangered as defined in section 2919.22 of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child;

(C) Exhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it. Except as provided in division (D) of this section, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a parent, guardian, custodian, person having custody or control, or person in loco parentis of a child is not an abused child under this division if the measure is not prohibited under section 2919.22 of the Revised Code.

(D) Because of the acts of his parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare.

{¶9}   HCJFS further alleged that T.J. was dependent under R.C. 2151.04(C), which provides that a dependent child is one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship."

{¶10} At the adjudication hearing, Danielle Hutchinson, an intake worker with Hamilton County Children's Services, testified that in early May 2016, she received an allegation that then 13-year-old T.J. had been physically abused. The allegation stated that mother had beaten T.J. with a mirror and that T.J. was fearful to show mother her upcoming report card because of mother's potential reaction.

Hutchinson made contact with both mother and T.J., and she viewed injuries on T.J. allegedly inflicted by mother. She saw a scar that T.J. reported was caused when mother attempted to attack her with a knife, and a cut that T.J. reported was caused when mother threw a mirror at her shin. Because T.J. had threatened to kill herself if taken home, she was placed at Lighthouse Youth Services and a safety plan was initiated. Under the safety plan, mother was not to have any unsupervised contact with T.J. T.J.'s father has no involvement with her.

{¶11} Hutchinson testified that the safety plan was disrupted several days later, when she received a voicemail from mother stating that mother intended to get T.J. from school. Hutchinson went to T.J.'s school and learned that T.J. had been suspended. She saw mother, who refused to speak with her. Hutchinson testified that mother had refused to sign a release of information and to complete a requested diagnostic assessment. Hutchinson was concerned that mother was not willing to address T.J.'s mental-health issues.

{¶12} John Stacy, dean of students at T.J.'s school, testified that T.J. had extensive discipline problems and had been involved in multiple altercations with other students, several of which were violent. Stacy testified that T.J. showed an abnormal reaction to being disciplined. Mother consistently responded when Stacy attempted to contact her, but when T.J.'s behavioral problems were explained, mother always defended T.J. and blamed the other party. Amy Verkamp-Collopy, a counselor at T.J.'s school, testified that T.J. was a very angry child who struggled to form peer relationships. She explained that T.J. was mostly the aggressor in the altercations she was involved in. Verkamp-Collopy offered counseling services to mother for T.J. Mother declined the offered services, but did allow T.J. to work with

a student intern through Family and Student Services. T.J. never presented with visible injury to Verkamp-Collopy or expressed concerns about her home life.

{¶13} Stephanie Rowland, a social worker in the Psychiatric Residential Program at Children's Hospital Medical Center, testified that she had counseled T.J. while T.J. was admitted to the hospital. She explained that T.J. had been diagnosed with disruptive dysregulation mood disorder, ADHD, PTSD, and a language disorder. T.J. reported to Rowland that she had a difficult time at school and that she had suffered physical abuse from her mother, specifically that mother had thrown a mirror at her. But she admitted that she had made up the story about her mother stabbing her in the leg. Rowland conducted two family therapy sessions with T.J. and mother, but was concerned with the effect of the sessions on T.J. because the two would argue over whether abuse had occurred in the home. Rowland also canceled several of T.J.'s visits with mother during her hospitalization because of aggression that T.J. had expressed towards mother.

{¶14} Mother testified at the adjudication hearing and denied the allegations of physical abuse. She further denied violating the safety plan, and explained that she had gone to T.J.'s school after receiving a call that T.J. had been suspended.

{¶15} Following our review of the record, we find that clear and convincing evidence supported the trial court's determination that T.J. was abused and dependent, and that the trial court, in adjudicating T.J. abused and dependent, did not lose its way and create such a manifest miscarriage of justice that we must reverse its decision. *See In re K.G.*, 1st Dist. Hamilton No. C-120772, 2013-Ohio-3160, ¶ 15, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. Regarding the trial court's abuse determination, the court was

presented with evidence about injury suffered by T.J. at mother's hand, specifically that mother had thrown a mirror at T.J. *See* R.C. 2151.031(C) and (D). As to the dependency determination, the record demonstrates that T.J. suffered from mental-health issues and had extensive behavioral problems at school, and that mother refused to recognize T.J.'s fault in these aggressive incidents and refused offered therapeutic services for T.J. *See* R.C. 2151.04(C).

{¶16} We now turn to the trial court's determination that it was in T.J.'s best interest to be placed in the temporary custody of HCJFS.

{¶17} Pursuant to R.C. 2151.353(A),[1] after a child is adjudicated abused, neglected, or dependent, the court may make any of the following orders of disposition:

(1) Place the child in protective supervision;

(2) Commit the child to the temporary custody of a public children services agency * * *;

(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child * * *.

(4) Commit the child to the permanent custody of a public children services agency * * *.

(5) Place the child in a planned permanent living arrangement with a public children services agency * * *.

(6) Order the removal from the child's home * * *.

---

[1] We apply the version of the statute that was in effect on October 7, 2016, the date that HCJFS filed the third amended complaint for temporary custody. *See In re C.M.*, 1st Dist. Hamilton Nos. C-150365 and C-150396, 2015-Ohio-3971, ¶ 13.

The best interest of the child is the primary consideration when choosing among these dispositional options. *In re A.W.*, 1st Dist. Hamilton No. C-140142, 2015-Ohio-489, ¶ 8.

{¶18} The trial court's decision to grant a motion for temporary custody pursuant to R.C. 2151.353(A)(2) must be supported by a preponderance of the evidence, and will not be reversed absent an abuse of discretion. *See In re Day*, 12th Dist. Clermont No. CA2002-09-073, 2003-Ohio-3544, ¶ 22 (holding that "[u]nless a trial court chooses one of the two most restrictive dispositions under [R.C. 2151.353](A)(4) or (5), the court need only show that it chose the appropriate disposition by a preponderance of the evidence," and that the court's disposition will not be reversed absent an abuse of discretion); *In re R.E.C.*, 4th Dist. Washington No. 11CA2, 2011-Ohio-3437, ¶ 12 ("A juvenile court has broad discretion in the disposition of an abused, neglected, or dependent child."); *In re A.W.* at ¶ 9-10 (holding that "[b]ecause an award of legal custody does not divest parents of their residual parental rights, privileges, and responsibilities, appellate courts apply a preponderance of the evidence standard to the juvenile court's factual findings" and review an award of legal custody under R.C. 2151.353(A)(3) for an abuse of discretion). A trial court abuses its discretion in this context when its decision regarding the child's best interest is not supported by competent, credible evidence. *In re M., R., and H. Children*, 1st Dist. Hamilton No. C-170008, 2017-Ohio-1431, ¶ 30.

{¶19} HCJFS caseworker Rachel Butler testified at the disposition hearing that T.J. remained fearful of mother and did not want to return home. At the time of the hearing, T.J. was placed in a group home, but during the pendency of the action

has had suicidal ideations and has been hospitalized multiple times. Butler testified that mother refuses to acknowledge T.J.'s mental-health issues, and has refused to sign a release of information, a prerequisite to undergoing a diagnostic assessment and engaging in services.

{¶20} The magistrate conducted an in camera interview with T.J. T.J. told the magistrate that she wanted to visit with mother, but that she did not want to return to mother's home.

{¶21} Mother did not testify at the dispositional hearing, but introduced several exhibits, including a diagnostic assessment that she had privately engaged in.

{¶22} Following our review of the record, we conclude that the trial court's determination that a grant of temporary custody to HCJFS was in T.J.'s best interest was not against the manifest weight of the evidence, and the trial court did not abuse its discretion in reaching that decision. T.J., a teenager able to express her own desires, stated to both the magistrate and her caseworker that she did not want to return to mother's care. T.J. has had multiple placements since entering the care of HCJFS, including a therapeutic foster home, two group homes, and multiple hospitalizations.

{¶23} T.J. and mother have a volatile relationship. Both their family therapy sessions and visitation were terminated because of the effect of the therapy sessions on T.J. and the aggression T.J. expressed towards mother. Neither family therapy nor visitation had resumed at the time that HCJFS was granted temporary custody. Mother participated in a private diagnostic assessment, but she has refused to sign a release of information despite the lengthy history of this case. Without the release of information, mother cannot participate in a diagnostic assessment to determine

what services should be recommended. Further, T.J. has extensive mental-health issues that mother fails to appreciate.

{¶24} The trial court did not err in determining that T.J. was abused and dependent and in granting temporary custody of T.J. to HCJFS. Mother's first assignment of error is overruled.

*In Camera Hearing*

{¶25} In her second assignment of error, mother argues that the trial court erred in overruling her motion to set aside the magistrate's order which reflected that an in camera hearing had taken place and that the case was continued for disposition. She argues that T.J.'s testimony from the in camera hearing should be set aside and a new in camera hearing should be ordered.

{¶26} At the dispositional hearing on July 12, 2017, mother requested that the magistrate conduct an in camera hearing with T.J. The magistrate agreed, and informed mother that the only persons who would be present during the in camera would be T.J., the magistrate, and T.J.'s guardian ad litem. The hearing was scheduled for July 25, but it was postponed because T.J. was hospitalized on that date. On July 27, the magistrate conducted the in camera hearing with a hospitalized T.J. via a video teleconference and issued a corresponding order stating that the hearing had occurred. Mother filed a motion to set aside the magistrate's order, arguing that she had not been informed that the hearing was being held that day, and that she would not have agreed to an in camera hearing while T.J. was hospitalized and allegedly incompetent.

{¶27} In an entry overruling mother's motion, the trial court stated that it had reviewed the audio-visual recording from the in camera hearing and that the

magistrate and T.J. had been able to effectively communicate. It specifically found that T.J. "exhibited sufficient reasoning ability to clearly and effectively articulate and communicate her wishes and concerns to the magistrate."

{¶28} The trial court did not err in overruling mother's motion to set aside the magistrate's order. Mother was aware that the in camera hearing would occur and that she would not be present for it. We have independently reviewed the recorded hearing, and we agree with the trial court's determination that T.J. and the magistrate were able to effectively communicate. T.J. was able to clearly articulate her feelings regarding mother and express her desires regarding her placement.

{¶29} The second assignment of error is overruled.

### *Case Plan*

{¶30} In her third assignment of error, mother argues that the trial court erred by approving and incorporating a case plan filed on September 1, 2017, without following the procedure set forth in R.C. 2151.412.

{¶31} On September 1, 2017, HCJFS filed an amended case plan detailing a proposed change in placement for T.J. The amended case plan provided that T.J. was being discharged from the hospital and placed at "Nella's Place." On September 19, 2017, the magistrate entered an order approving and incorporating the amended case plan. Mother filed an objection to the magistrate's order, asserting that she had not been given notice of the case plan. The trial court overruled mother's objection.

{¶32} Mother contends on appeal that she was not given notice of, or an opportunity to object to, the case plan, and that HCJFS failed to obtain an agreement between the parties as to the contents of the case plan, in violation of R.C. 2151.412. Mother's argument is misplaced.

11

{¶33}   HCJFS was not required to obtain an agreement between the parties before filing a proposed change to the case plan.   R.C. 2151.412(E) provides that "[a]ny agency that is required by division (A) of this section to prepare a case plan shall attempt to obtain an agreement among all parties, including, but not limited to, the parents, guardian, or custodian of the child and the guardian ad litem of the child regarding the content of the case plan."   This provision requires HCJFS to "attempt to obtain an agreement among all parties" when a case plan is being prepared.   Here, T.J.'s case plan had already been prepared and journalized by the court.   Mother objected to a proposed change to that case plan, rather than to the initial case plan.

{¶34}  In such cases, R.C. 2151.412(F)(2) governs proposed changes to case plans, and it provides that:

> Any party may propose a change to a substantive part of the case plan, including, but not limited to, the child's placement and the visitation rights of any party.  A party proposing a change to the case plan shall file the proposed change with the court and give notice of the proposed change in writing before the end of the day after the day of filing it to all parties and the child's guardian ad litem.  All parties and the guardian ad litem shall have seven days from the date the notice is sent to object to and request a hearing on the proposed change.
>
> (a) If it receives a timely request for a hearing, the court shall schedule a hearing pursuant to section 2151.417 of the Revised Code to be held no later than thirty days after the request is received by the court.  The court shall give notice of the date, time, and location of the hearing to all parties and the guardian ad litem.  The agency may implement the

proposed change after the hearing, if the court approves it. The agency shall not implement the proposed change unless it is approved by the court.

(b) If it does not receive a timely request for a hearing, the court may approve the proposed change without a hearing. If the court approves the proposed change without a hearing, it shall journalize the case plan with the change not later than fourteen days after the change is filed with the court.

{¶35} The amended case plan that was filed with the court stated that both mother and T.J.'s guardian ad litem had been notified of the proposed change via email. Mother failed to file objections and request a hearing, and the magistrate approved the amended case plan. Because mother had been notified of the amended case plan and failed to file timely objections and request a hearing, we hold that the magistrate did not err in approving the amended case plan without a hearing. *See* R.C. 2141.412(F)(2)(b). And even if mother had not received notice of the case plan, she has suffered no resulting prejudice. The trial court considered and overruled mother's objection to the amended case plan, and in doing so approved of the proposed change that it contained.

{¶36} The third assignment of error is overruled.

### *Miscellaneous Motions*

{¶37} In her fourth assignment of error, mother argues that the trial court "erred in finding in its 12/11/17 judicial entry, that the 11/22/17 magistrate's decision was supported by the evidence and in accordance with the law."

{¶38} In a decision dated November 22, 2017, the magistrate ruled on various motions that mother had filed during the course of this action. Mother filed objections to that decision, which the trial court denied in an entry dated December 11, 2017. Mother specifically argues that the trial court erred in dismissing the following motions: a motion to return child, two motions to dismiss, a motion to dismiss and return child, a motion for a new trial, and a motion for relief from judgment.

{¶39} As mother acknowledges, this assignment of error is a recapitulation of her first assignment of error. Consequently, this assignment of error is overruled based on our resolution of the first assignment of error.

### *Conclusion*

{¶40} Having overruled mother's assignments of error, we accordingly affirm the trial court's judgments in the appeals numbered C-170584 and C-180002. The appeal numbered C-180329 is dismissed.

Judgment accordingly.

MOCK, P.J., and DETERS, J., concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.