[Cite as *In re S.K.*, 2019-Ohio-2516.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: S.K., T.K., D.T., M.T., J.T., and R.T. | : | JUDGES: |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
|  | : | Hon. Craig R. Baldwin J. |
|  | : |  |
| DEPENDENT CHILDREN | : |  |
|  | : | Case Nos. 18CA89,18CA90, |
|  |  | 18CA91,18CA92, 18CA93, 18CA94 |
|  | : |  |
|  | : |  |
|  | : | OPINION |

CHARACTER OF PROCEEDING:  Civil appeal from the Richland County Court of Common Pleas, Juvenile Division, Case Nos. 2017-DEP-00081, 2017-DEP-00082, 2017-DEP-00083, 2017-DEP-00084, 2017-DEP-00085, and 2017-DEP-00086

JUDGMENT:  Affirmed

DATE OF JUDGMENT ENTRY:  June 24, 2019

APPEARANCES:

For: Richland County Children's Services
731 Scholl Road
Mansfield, OH  44907

For: Mother-Appellant
DARIN AVERY
105 Sturges Avenue
Mansfield, OH 44903

*Gwin, P.J.*

**{¶1}** Appellant-mother, B.S., appeals the decisions of the Richland County Court of Common Pleas, Juvenile Court Division entered on August 31, 2018, that issued dispositional orders pertaining to her children D.T[1]., M.T.[2], R.T.[3], J.T.[4] S.K. [5]and T.K[6]. under R.C.2151.353(A). Appellee the Richland County Children Services Board ["RCCSB"] did not file a brief in this case.

*Facts and Procedural History*

**{¶2}** Appellee RCCSB did not file a brief in this matter. Pursuant to App.R. 18(C), in determining the appeal, we may accept Appellant's statement of the facts and issues as correct, and reverse the judgment if Appellant's brief reasonably appears to sustain such action. *See State v. S.K.,* 5th Dist. Richland No. 18CA89, 2018-Ohio-3332; *State v. S.H.*, 5th Dist. Guernsey No. 10CA000023, 2010-Ohio-5741, ¶17; *State v. McLeod,* 5th Dist. Knox No. 2011-CA-22, 2012-Ohio-1797, ¶2. Therefore, we presume the validity of Appellant's statement of facts and issues.

**{¶3}** RCCSB filed complaints on May 4, 2017, alleging D.T. and his sibling, M.T., to be abused and dependent children, and their other siblings, R.T., J.T., S.K., and T.K., to be dependent children due to concerns of physical abuse by mother's paramour stemming from an incident on January 17, 2017.

**{¶4}** Following that incident, mother had agreed to a voluntary safety plan placing her children with her sister, the grandmother of two of the children, and a friend. On or

---

[1] *In re D.T.*, 5th Dist. Richland No. 18CA91.
[2] *In re M.T.*, 5th Dist. Richland No. 18CA92.
[3] *In re R.T.,* 5th Dist. Richland No. 18CA94.
[4] *In re J.T.*, 5th Dist. Richland No. 18CA93.
[5] *In re S.K.,* 5th Dist. Richland No. 18CA89.
[6] *In re T.K.,* 5th Dist. Richland No. 18CA90.

about May 12, 2017, mother gathered her children from those voluntary placements and moved to Kentucky with the father of four of the children.

{¶5} On May 18, 2017, the trial court issued an ex parte order placing the children in the temporary custody of RCCSB in response to a motion alleging that mother had fled. On May 19, 2017, the trial court held a hearing at which it heard no evidence and on May 22, 2017, issued an order continuing the previous order of temporary custody to RCCSB. On May 20, 2017, representatives of RCCSB went to Kentucky seeking the children, and Appellant voluntarily surrendered the children to them.  Appellant was served with the complaint on May 20, 2017, by residential service at her home in Mansfield, Ohio.

{¶6} On July 21, 2017, the magistrate heard testimony from Detective David Scheurer of the Mansfield City Police Department; S. K., maternal aunt; N. H., family friend and temporary caregiver; and Y. G. of Encompass Counseling Services.

{¶7} On August 29, 2017, and October 6, 2017, Appellant moved for dismissal for failure to follow the time requirements of R.C. 2151.35(B).

{¶8} On August 31, 2017, the magistrate heard testimony from T. G., counselor at Malabar Middle School; and B.P., A.H., and K.K., RCCSB caseworkers.

{¶9} On October 12, 2017, the magistrate heard testimony from Appellant, called to testify by her counsel.

{¶10} On August 31, 2017, the magistrate, with the consent of all parties, admitted into evidence RCCSB Exhibits A-1 through A-15 and B-1 through B-8, each being photographs of the minor child and siblings.  On October 12, 2017, with the consent of all parties, the magistrate admitted into evidence RCCSB Exhibit C, being medical records

regarding Appellant from Urgent Care dated January 2, 2017. After the presentation of evidence, the magistrate heard closing arguments from the parties.

{¶11} The Richland County Court of Common Pleas, Juvenile Division, in its October 25, 2017, entry, overruled Appellant's motions to dismiss and found all six children dependent and M.T. and D.T. abused.

{¶12} Appellant timely objected to the magistrate's decisions regarding dependency, abuse, and mother's motion to dismiss. The trial court overruled Appellant's objections by entry dated March 16, 2018.

{¶13} In the meantime, the magistrate in the case at bar, conducted hearings on disposition on November 8, 2017, January 12, 2018 and March 22, 2018. The magistrate issued a decision on April 9, 2018 addressing disposition. The trial court approved and adopted the decision the same day.

{¶14} Appellant filed a notice of appeal to this Court on April 11, 2018. Upon review, this Court overruled Appellant's five assignments of error. *See*, *State v. S.K.,* 5th Dist. Richland No. 18CA89, 2018-Ohio-3332. The Ohio Supreme Court accepted the cases as a jurisdictional appeal on December 12, 2018. *See, In re S.K.,* 154 Ohio St.3d 1443, 2018-Ohio-4962, 113 N.E.3d 55. It appears that briefing is complete in the Ohio Supreme Court.

{¶15} However, on April 19, 2018, Appellant filed objections under Juv.R. 40 to the magistrate's April 9, 2018 decision that had been approved and adopted by the trial court. The trial court overruled the objections and issued a Dispositional Order on August 31, 2018.

{¶16}  On October 1, 2018, Appellant filed a notice of appeal from the trial court's August 31, 2018 decision.

*Assignments of Error*

{¶17}  Mother raises three assignments of error,

{¶18}  "I. THE COURT'S FAILURE TO RETURN THE CHILDREN HOME WITH A PSO WAS CONTRARY TO THE BEST INTERESTS OF THE CHILDREN.

{¶19}  "II. RCCS DID NOT MAKE REASONABLE EFFORTS TO REUNIFY THE CHILDREN WITH THEIR MOTHER.

{¶20}  "III. THE TRIAL COURT ERRED IN FINDING THAT RCCS DID MAKE REASONABLE EFFORTS TO REUNIFY THE CHILDREN WITH THEIR MOTHER.

**STANDARD OF APPELLATE REVIEW.**

{¶21}  Importantly, the award of temporary custody is "not as drastic a remedy as permanent custody." *In re L.D.,* 10th Dist. No. 12AP–985, 2013–Ohio–3214, ¶ 7.  *See also In re N.F.,* 10th Dist. No. 08AP–1038, 2009–Ohio–2986, ¶ 9.  This is because the award of temporary custody does not divest parents of their residual parental rights, privileges, and responsibilities.  *In re C.R.* at ¶ 17.  Therefore, since the granting of temporary custody does not divest a parent of his or her fundamental parental rights, the parent can petition the court for a custody modification in the future.  *In re L.D.* at ¶ 7.

{¶22}  "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen,* 129 Ohio St.3d 417, 2011–Ohio–3361, ¶ 14.  We review the award of legal custody for an abuse of discretion. *In re L.D.* at ¶ 8; *In re Gales,* 10th Dist. No. 03AP–445, 2003–Ohio–6309, ¶ 13; *In re N.F.,* 10th Dist. No. 08AP–1038, 2009–Ohio–2986, ¶ 9, citing *In re Nice,* 141 Ohio App.3d 445, 455 (7th Dist.).  Abuse of discretion connotes more than an error of law or

judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶23} Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re S.D.,* 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013-Ohio-5752, ¶ 32; In *re A.C.,* 12th Dist. No. CA2006–12–105, 2007–Ohio–3350 at ¶ 14; *In re Nice,* 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001).

I.

{¶24} In her First Assignment of Error, Mother in one paragraph argues, "The caseworker testified that mother was "doing everything I need her to be doing." Tr. 79.13, However, despite her putting "anything in the case plan that somebody feels that would be beneficial for mom [,}" she did not "feel comfortable [with reunification.]" Tr. 84.11-22, 65.24. She could neither provide a set of circumstances that would alleviate her reluctance, nor could she even say that such a set of circumstances existed. Tr. 82.17, .84.2-10. She similarly avoided any commitment with regard to her concerns about mother's history. Tr. 65.1." Appellant's Brief at 8.

{¶25} R.C. 2151.011(B)(21) defines "legal custody" as "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities..." In addition, R.C. 2151.011(B)(55) defines "temporary custody" as "legal custody of a child

who is removed from the child's home, which custody may be terminated at any time at the discretion of the court * * *."

{¶26} In this type of dispositional hearing, the focus is on the best interest of the child. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188; *In re P.S.,* 5th Dist. No.2012CA00007, 2012–Ohio–3431. Despite the differences between a disposition of permanent custody and legal custody, some Ohio courts have recognized "the statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.,* 9th Dist. No. 24317, 2009–Ohio–333 at ¶ 7, citing *In re T.A.,* 9th Dist. No. 22954, 2006–Ohio–4468 at ¶ 17; *In re S.D.* 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013-Ohio-5752, ¶ 33 .

{¶27} R.C. 2151.414(D) sets forth factors to be considered in making a determination regarding the best interest of the child. These factors include, but are not limited to, the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶28}   In the case at bar, the trial court found,

At disposition, Caseworker Campbell gave testimony expanding on [B.S.]'s inadequate cooperation in resolving issues of abusive male figures in her home and their mistreatment of her children.   Caseworker Jackson, the current ongoing caseworker for the family explained that reunification of [B.S.] remained the goal in this matter; however, insufficient progress has been made to date to allow reunification.  Jackson described a proposed Case Plan which includes continuing personal and domestic violence counseling for [B.S.]; continuing parental education; improvements in resource management, housing and parental ability to meet the child's basic and special needs; counseling for the minor child, including any developmental and behavioral issues; and appropriate parental visitation. Caseworker Jackson indicated that [B.S.] now is cooperative, more insightful, and beginning to make progress on these issues.

{¶29}   Caseworker Jackson testified that Mother is only recently beginning to come to terms with her own past history of abuse.  T. at 40.  Mother has a history of being involved with abusive men.   Id.   Caseworker Jackson further testified that Mother struggles to acknowledge her part in the behaviors that led to the abuse of two of her children.  T. at 43.

**{¶30}** Caseworker Jackson testified that due to an issue with the foster parents, the boys were being moved. T. at 51-53. New foster parents have been found. The boys will have to change school districts. T. at 52-53. The boys are not ready to go home because they have not really addressed the trauma that they have suffered. T. at 54-55.

**{¶31}** Caseworker Jackson testified that the girls are doing well in the care of the paternal grandmother. T. at 53-54.

**{¶32}** Upon thoroughly reviewing the record, we find that there was competent, credible evidence supporting the trial court's determination that not returning the children to the custody of Mother was in the best interest of the children. In light of the trial court's broad discretion in custody determinations, the fact that such a determination should be accorded the utmost respect by a reviewing court, the court had the benefit of the report of the guardian ad litem, the fact that credibility issues which are critical in custody cases do not translate into the record, we cannot say that the trial court abused its discretion.

**{¶33}** Mother's First Assignment of Error is overruled.

## II. & III.

**{¶34}** In her Second and Third Assignments of Error Mother argues that the record fails to show that RCCSB made reasonable efforts to reunify the children with their mother.

**{¶35}** The Supreme Court of Ohio in *In re C.F.*, 113 Ohio St. 3d 73, 78, 862 N.E. 2d 816, 821(2007) noted,

> [N]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment,

separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.' R.C. 2151. 01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151. 412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal 'to eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.' Under R.C. 2151. 413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151. 413(D) - the '12 months out of 22 rule'- '[i]f reasonable efforts to return the child to the child's home are required under section 2151. 419' and the agency has not provided the services required by the case plan.

{¶36} A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011(12th Dist. 1992).

{¶37} "When a trial court is considering whether the agency made reasonable efforts to prevent the removal, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. *In re Brewer* (Feb. 12, 1996), Belmont App. No. 94–B–28. 'In determining whether reasonable efforts were made, the child's health and safety shall be paramount.' R.C. 2151.419(A)(1)." *In re R.P.,* 5th Dist. Tuscarawas No. 2100AP050024, 2011-Ohio-5378, ¶47.

{¶38} R.C. 2151.419 requires the trial court to determine whether the agency filing the complaint for custody "has made reasonable efforts * * * to eliminate the continued

removal of the child from his home, or to make it possible for the child to return home." Subsection (B)(1) mandates the trial court to issue written findings of fact setting forth the reasonable efforts made by the agency, including a brief description of "the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home."

**{¶39}** However, even where a trial court has failed to include in its judgment entry, the findings contemplated by R.C. 2151.419(B)(1) we have found that the ultimate issue is the reasonableness of the Department's efforts, and have concluded those efforts may be determined from the record. *In the matter of Kell/Bess Children*, 5th Dist. No. 97CA0278, 1998 WL 401767(Mar. 23, 1998); *Hunt v. Ickes,* 5th Dist. Tuscarawas No. 2014 AP 08 0032, 2015-Ohio-309, ¶19.

**{¶40}** This court has reviewed the magistrate's findings of fact and finds the aforementioned findings of fact were sufficient for the trial court to make an independent analysis and to apply appropriate law in reaching its judgment as required in Juv.R. 40(E)(4).

**{¶41}** We believe the record supports a good faith effort on the part of RCCSB. RCCSB and other agencies have provided Mother with those services required by the reunification plan.

**{¶42}** In the case at bar, the record demonstrates that Mother has diligently and conscientiously complied with the case plan. The agency caseworker testified that Mother had engaged in her case plan services since the inception of the case plan prior to filing of any of the complaints in this case. T. at 71. Mother has stable housing with room for the children. Mother attended every visit with her six children. The caseworker testified

that mother was "doing everything I need her to be doing."  Mother has covered the information in question T. at 214.  Mother had digested that material T. 216; 218.  Mother had demonstrated in a real life situation that she could apply the information to her present circumstances.  T. at 276.  However, the record also supports the trial court's findings that Mother needs further work to recognize signs of violent relationships prior to suffering further violence.  T. at 63.  The trial court noted,

> Testimony from [K. F.], [Mother's] mental health counselor, was crucial to this Court's decision.  [K.F.] testified that [Mother] suffers from post-traumatic stress disorder, major depressive disorder, and a "rule-out" diagnosis of anxiety disorder.  According to [K.F.], [Mother] suffered from serious sexual and physical abuse as a child, which left her with a "distorted, dysfunctional relationship with men," especially with men who she perceives as being in a position of power.  This has led [Mother] to form relationships with abusive men and to fail to recognize signs of abuse of her children despite her own experiences.  Somehow, [Mother's] mental health issues and life experience had blinded her to abuse suffered by her children despite clear signs of abuse.

> While [K.F.] commenced counseling with [Mother] in March or April of 2017, [K.F.] spent the balance of 2017 "building trust" with [Mother], making little progress on the issues of domestic violence.  Around January of 2018, [K.F.] testified that "a light went on" and [Mother] began to understand the danger to her children from the introduction of abusive men into her household.  While commending [Mother] on her recent progress,

[K.F.] noted that [Mother's] road to recovery is a long one and that years of damage cannot be undone in 11 months of counseling. [K.F.] asserted that [Mother] will have to resolve her own issues and develop coping mechanism and insight before she can provide adequate protection for her children; and that [Mother] needs to stay the course over a long road to recovery.

**{¶43}** We find that the record supports that all parties are working toward the goal of reunification. We find no evidence of dishonest purpose, conscious wrongdoing, or breach of duty on the part of RCCSB.

**{¶44}** Having reviewed the record, we find that RCCSB is making a good faith effort to reunify Mother and her children. Furthermore, the record contains clear and convincing evidence to support the court's determination that the children could not be placed with Mother at the present time.

**{¶45}** In the case at bar, the trial court only awarded temporary custody of the children. The important distinction is that an award of temporary legal custody of a child does not divest parents of their residual parental rights, privileges, and responsibilities. See R.C. 2151.011(B)(19) and *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 8, fn. 1. In the future, then, in this case, Mother may petition the court for a review and a modification of custody. Id. at ¶ 36.

**{¶46}** Mother's Second and Third Assignments of Error are overruled.

{¶47} The judgment of the Richland County Court of Common Pleas, Juvenile Court Division is affirmed.

By Gwin, P.J., and

Baldwin, J., concurs

Wise, John, J., concurs

in judgment only.

*Wise, J., concurring in judgment only*

**{¶48}** I respectfully concur in judgment only and write separately, as in essence I find it unnecessary in these six cases to address the merits of appellant's challenges to the juvenile court's dispositional orders, as appellant's assigned errors should be overruled based on the doctrine of the law of the case.

**{¶49}** The law of the case doctrine provides that a decision of a reviewing court in a case remains the law of the case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. *U.S. Bank v. Detweiler.* 5th Dist. Stark No. 2011 CA00095, 2012–Ohio–73, ¶ 26, citing *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 462 N.E.2d 410.

**{¶50}** As the majority herein notes, appellant filed her notices of appeal in the six cases on April 11, 2018, challenging in each instance the juvenile court's March 16, 2018 adjudication of dependency and/or abuse. In our opinions issued in mid-August 2018, we *sua sponte* considered the issue of final appealability, as it is well-established that a dependency adjudication must be accompanied by an order of disposition in order to constitute a final appealable order. *See, e.g., In re K.M.*, 3rd Dist. Shelby No. 17-11-15, 2011-Ohio-3632, ¶ 22. In that vein, we clearly held: "Therefore, because there is a final dispositional order in this case, the order is a final appealable order." *See S.K. I*, *T.K. I*, *D.T. I*, *M.T. I*, *J.T. I*, and *R.T. I* at ¶ 3.

**{¶51}** However, it apparently had escaped this Court's notice that appellant, on April 19, 2018, had filed Juv.R. 40 objections in each case to the magistrate's dispositional decision, which had been issued on April 9, 2018. Those objections were thus pending in

the juvenile court until they were overruled via judgment entries issued on August 31, 2018, about two weeks after our decisions in the six appeals.

{¶52}  I find this procedural history creates an incongruence with our conclusions in *S.K. I*, *T.K. I*, *D.T. I*, *M.T. I*, *J.T. I*, and *R.T. I* that a final dispositional order existed in each case for purposes of those appeals. Nonetheless, whether a judgment is a final, appealable order is a question of law. *State v. Robinson*, 9th Dist. Summit No. 26365, 2012-Ohio-3669, ¶ 7. Thus, our explicit ruling in the August 2018 opinions that a final appealable order existed was a legal conclusion, but appellant did not thereafter ask us to reconsider same via a motion under App.R. 26(A). She instead took our decisions and pursued further appeal thereof to the Ohio Supreme Court.

{¶53}  Under the circumstances presented, pursuant to the doctrine of the law of the case, I find appellant is bound by our rulings under *S.K. I*, *T.K. I*, *D.T. I*, *M.T. I*, *J.T. I*, and *R.T. I* that disposition and final appealability in this matter were previously established in April 2018. Appellant therefore should not now be permitted to pursue piecemeal appellate review of these six dispositional orders, particularly when one considers that the originating dependency and/or abuse complaints go all the way back to May 2017.

{¶54}  Accordingly, I would overrule all three Assignments of Error and affirm the juvenile court on the aforesaid grounds alone.

_____
JUDGE JOHN W. WISE