[Cite as *In re G.J.*, 2021-Ohio-3786.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
CRAWFORD COUNTY

IN RE:

K.S.,

ADJUDICATED DEPENDENT CHILD.

[CRYSTAL W. - APPELLANT]

CASE NO. 3-21-01

O P I N I O N

IN RE:

G.J.,

ADJUDICATED DEPENDENT CHILD.

[CRYSTAL W. - APPELLANT]

CASE NO. 3-21-02

O P I N I O N

IN RE:

A.J.,

ADJUDICATED DEPENDENT CHILD.

[CRYSTAL W. - APPELLANT]

CASE NO. 3-21-03

O P I N I O N

Appeals from Crawford County Common Pleas Court
Juvenile Division
Trial Court Nos. 2205241, 2205142 and 2205140

Judgment Affirmed in Case No. 3-21-02
Appeals Dismissed in Case Nos. 3-21-01 and 3-21-03

Date of Decision: October 25, 2021

Case Nos. 3-21-01, 3-21-02 and 3-21-03

APPEARANCES:

*Geoffrey L. Stoll* **for Appellant**

**ZIMMERMAN, J.**

{¶1} Appellant, Crystal W. ("Crystal"), appeals the February 4, 2021 decisions of the Crawford County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor child, G.J., a child (allegedly) in her legal custody, K.S., and a child in her physical custody, A.J., to Crawford County Job and Family Services (the "agency"). For the reasons that follow, we affirm the trial court's decision granting permanent custody of G.J. to the agency and dismiss the cases involving K.S. and A.J.

{¶2} K.S., born in 2014, and A.J., in 2015, are the minor children of Erika S. ("Erika") and Mason S. ("Mason").[1] (Case No. C2205140, Doc. No. 1); (Case No. C2205141, Doc. No. 1). Erika and Mason allegedly agreed to share legal custody of K.S. with Crystal and Erika allegedly left A.J. in Crystal's care.

---

[1] Despite being properly served with notice, neither Erika nor Mason participated in the trial court proceedings. (*See, e.g.*, Case No. C2205140, Doc. Nos. 2, 6, 7, 8, 9, 10, 12, 17); (Case No. C2205141, Doc. Nos. 2, 7, 8, 9, 10, 12, 17). However, Erika participated in the permanent-custody hearing. (Case No. C2205140, Doc. No. 17); (Case No. C2205141, Doc. No. 17).

{¶3} G.J., born in 2018, is the minor child of Crystal and Joshua J. ("Joshua").[2] (Case No. C2205142, Doc. No. 1). G.J. tested positive for THC at birth. (Case No. C2205142, Doc. No. 15). Following G.J.'s birth, the agency filed complaints on October 10, 2018 alleging G.J., K.S., and A.J. to be neglected or dependent children. (*See* Case No. C2205140, Doc. No. 17); (Case No. C2205141, Doc No. 17); (Case No. C2205142, Doc. No. 15). Even though the trial court adjudicated that G.J., K.S., and A.J. were neglected or dependent children, the trial court ordered that the children remain in the "custody" of Crystal on the condition that she "remain drug-free." (*Id.*); (*Id.*); (*Id.*). Because Crystal remained "drug free through April 2019[, the agency] closed [the] cases involving [G.J.] and [K.S.] but for some reason the case involving [A.J.] remained open." (*Id.*); (*Id.*); (*Id.*).

{¶4} However, after "[Crystal] tested positive for opiates without a prescription" on May 20, 2019, the agency filed complaints on November 13, 2019 alleging G.J. and K.S. to be dependent children, and the trial court adjudicated that G.J. and K.S. were dependent children. (*Id.*); (*Id.*); (*Id.*). After Crystal "tested positive on May 13, 2020 for methamphetamine," the trial court granted temporary custody of G.J., K.S., and A.J. to the agency. (*Id.*); (*Id.*); (*Id.*).

{¶5} On November 18, 2020, the agency filed new complaints in case numbers C2205142, C2205141, and C2205140 (because the previous cases were

---

[2] Despite being properly served with notice, Joshua did not participate in the trial court proceedings. (*See, e.g.*, Case No. C2205142, Doc. Nos. 5, 7, 9, 10, 11, 15).

closed due to the time restrictions in R.C. 2151.353 and 2151.415) alleging G.J., K.S., and A.J., respectively, to be dependent children under R.C. 2151.04. (Case No. C2205140, Doc. No. 1); (Case No. C2205141, Doc. No. 1); (Case No. C2205142, Doc. No. 1). In its complaints, the agency requested that the trial court grant it permanent custody of the children. (*Id.*); (*Id.*); (*Id.*).

{¶6} At a hearing on December 16, 2020, Crystal admitted that G.J. is a dependent child under R.C. 2151.04. (Case No. C2205142, Doc. No. 10). Further, at the same hearing, the parties stipulated that K.S. and A.J. are dependent children. (Case No. C2205140, Doc. No. 10); (Case No. C2205141, Doc. No. 10). On January 11, 2021, the trial court adjudicated that G.J., K.S., and A.J. are dependent children and committed them to the temporary custody of the agency. (Case No. C2205410, Doc. No. 10); (Case No. C2205141, Doc. No. 10); (Case No. C2205142, Doc. No. 10).

{¶7} On January 21, 2021, the agency filed motions to voluntarily dismiss its motions for permanent custody, alleging that it "identified an appropriate kinship caregiver." (Case No. C2205140, Doc. No. 13); (Case No. C2205141, Doc. No. 13); (Case No. C2205142, Doc. No. 12). However, after a hearing on February 2, 2021, the trial court concluded that it is in the best interest of the children to award permanent custody of them to the agency; therefore, the trial court granted permanent custody of G.J., K.S., and A.J. to the agency on February 4, 2021. (Case

No. C2205140, Doc. No. 17); (Case No. C2205141, Doc. No. 17); (Case No. C2205142, Doc. No. 15).

{¶8} On February 10, 2021, Crystal filed her notices of appeal in all three cases, which were consolidated for purposes of appeal.[3] (Case No. C2205140, Doc. No. 21); (Case No. C2205141, Doc. No. 21); (Case No. C2205142, Doc. No. 19). She raises two assignments of error for our review, which we review together.[4]

### Assignment of Error No. I

**The Trial Court's Grant of Permanent Custody Was Not in the Best Interest of the Minor Children and Was Against the Manifest Weight of the Evidence.**

### Assignment of Error No. II

**The Trial Court Erred in Proceeding With the Permanent Custody Hearing as the Department Had Found a Care Provider Who Was a Suitable Alternative for the Long-Term Care of the Minor Children.**

{¶9} In her assignments of error, Crystal argues that the trial court erred by granting permanent custody of G.J., K.S., and A.J. to the agency.[5] Specifically,

---

[3] Neither Joshua nor Erika nor Mason filed a notice of appeal.

[4] Even though this case involves appeals from decisions granting permanent custody of three children, the agency failed to file an appellee's brief in this case. Under these circumstances, App.R. 18(C) provides that this court "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." *See In re: S.K.*, 5th Dist. Richland No. 18CA89, 2019-Ohio-2516, ¶ 2. Because the agency permitted the previous cases involving the children to be closed due to the time restrictions in R.C. 2151.353 and 2151.415 and filed new permanent-custody complaints in these cases, and notwithstanding the serious consequences of a decision granting an agency permanent custody of a child, an appellee's brief addressing the facts and issues in these cases should have been provided to this court.

[5] Even though the trial court took judicial notice of the previous cases involving G.J., K.S., and A.J., it did not enter any part of those proceedings into the records for these cases. Consequently, this court "is unable to review the propriety of the trial court's reliance on them," "[u]nless such matters are included in the record

Crystal contends that the trial court's decision granting permanent custody of the children to the agency was not in the best interest of the children. Further, Crystal argues that the trial court erred by granting permanent custody of the children to the agency because "a suitable long-term care provider was available to take legal custody of the children so as to be able to maintain the relationship between [Crystal] and the children." (Appellant's Brief at 21).

*Standard of Review*

{¶10} The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972) and *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 6.

---

* * * ." *In re C.S.*, 9th Dist. Summit No. 25344, 2010-Ohio-4463, ¶ 17. Therefore, based on the limited record provided to this court, this court is unable to determine whether the trial court properly relied on them. *See id.*

{¶11} When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. *See In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody: (1) the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) the trial court must find that permanent custody is in the best interest of the child. *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 10. *See also In re Brown*, 98 Ohio App.3d 337, 343 (3d Dist.1994). R.C. 2151.414(B)(1) provides, in relevant part, that a trial court

> may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> (e) The child or another child in the *custody* of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

(Emphasis added.) R.C. 2151.414(B)(1)(e). *See also In re A.W.*, 9th Dist. Lorain No. 17CA011123, 2017-Ohio-7786, ¶ 17 (noting "that the five factors listed in R.C. 2151.414(B)(1)(a)-(e) are alternative findings, and that the agency need only prove one in order to satisfy the first prong of the permanent custody test").

{¶12} "If the trial court determines that *any* provision enumerated in R.C. 2151.414(B)(1) applies, the trial court must determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest." (Emphasis sic.) *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 55. In determining whether granting the agency permanent custody is in the best interest of the child, R.C. 2151.414(D)(1) provides:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

-8-

{¶13} If the trial court makes these statutorily required determinations, a reviewing court will not reverse a trial court's decision unless it is not supported by clear and convincing evidence. *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 43, citing *In re Meyer*, 98 Ohio App.3d 189, 195 (3d Dist.1994), citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985) and *In re Adoption of Lay*, 25 Ohio St.3d 41, 42 (1986). *See also In re A.E.*, 3d Dist. Seneca Nos. 13-14-14 and 13-14-15, 2014-Ohio-4540, ¶ 28 ("A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established."). "Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re S.G.*, 2015-Ohio-2306, at ¶ 10, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

{¶14} As an initial matter, we must address Crystal's standing to appeal the trial court's decision granting permanent custody of K.S. and A.J. to the agency. "Standing is 'a jurisdictional requirement; a party's lack of standing vitiates the party's ability to invoke the jurisdiction of a court—even a court of competent

subject-matter jurisdiction—over the party's attempted action.'" *Iden v. Zumbro*, 5th Dist. Licking No. 18-CA-56, 2019-Ohio-1051, ¶ 9, quoting *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 22. *See also In re T.S.*, 10th Dist. Franklin No. 18AP-270, 2019-Ohio-886, ¶ 4 ("'"Standing" is defined at its most basic as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right."'"), quoting *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 27, quoting *Black's Law Dictionary* 1442 (8th Ed.2004). "Only litigants with standing are entitled to have a court determine the merits of the claims they have presented." *In re T.W.*, 1st Dist. Hamilton No. C-130080, 2013-Ohio-1754, ¶ 7. "'Lack of standing is certainly a fundamental flaw that would require a court to dismiss the action * * * .'" *Iden* at ¶ 9, quoting *Kuchta* at ¶ 22.

{¶15} "Generally, the parties to [an] abuse, neglect, or dependency action are the child, the parents, the state, and the guardian ad litem." *In re A.B.*, 6th Dist. Lucas No. L-18-1136, 2018-Ohio-4206, ¶ 6, citing Juv.R. 2(Y). Typically, a nonparent who has neither "moved to intervene nor moved for legal custody cannot appeal a permanent custody award." *Id.* at ¶ 5. *See also In re L.R.T.*, 165 Ohio App.3d 77, 2006-Ohio-207, ¶ 13 (12th Dist.) ("Any person who seeks an award of legal custody of a child must, in accordance with the Rules of Juvenile Procedure,

file a motion, prior to the dispositional hearing, requesting such custody."); R.C. 2151.353(A)(3); Juv.R. 34(D)(3).

{¶16} Addressing K.S.'s case first, we conclude that Crystal lacks standing to appeal the trial court's decision granting permanent custody of K.S. to the agency. Even though the record reveals that Erika and Mason allegedly agreed to share legal custody of K.S. with Crystal, Crystal (as a non-parent) was required to file a motion (which she failed to do) requesting legal custody of K.S. prior to the dispositional hearing since K.S.'s case involves a custody proceeding regarding a child alleged to be abused, neglected, or dependent under R.C. 2151.23(A)(1). *Compare* R.C. 2151.23(A)(1) *with* 2151.23(A)(2). *See In re Poling*, 64 Ohio St.3d 211, 214 (1992) (noting that "the grants of jurisdiction in R.C. 2151.23(A)(1) and (A)(2) are independent of each other"). *See also In re Osberry*, 3d Dist. Allen No. 1-03-26, 2003-Ohio-5462, ¶ 9 (suggesting that "parental unfitness is implied" in abuse, neglect, and dependency cases given the findings necessary to make such determinations).

{¶17} Indeed, a juvenile court has exclusive original jurisdiction concerning a child alleged to be abused, neglected, or dependent. *In re S.L.*, 3d Dist. Union No. 14-15-07, 2016-Ohio-5000, ¶ 12. *See also In re J.L.M.*, 9th Dist. Summit No. 28867, 2018-Ohio-2175, ¶ 10, citing *State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Common Pleas Court, Prob. Div.*, 150 Ohio St.3d 230, 2016-Ohio-

7382, ¶ 21; R.C. 2151.353(A). Following the adjudication of a child alleged to be abused, neglected, or dependent, R.C. 2151.353(A) provides the juvenile court's dispositional options for the child. R.C. 2151.353(A) provides, in its relevant part, that the juvenile court "may * * *[a]ward legal custody of the child to * * * any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child * * * ." R.C. 2151.353(A)(3). *See, e.g.*, *In re L.R.T.* at ¶ 9.

{¶18} Here, the trial court had exclusive original jurisdiction concerning K.S. since she was alleged (and adjudicated to be) a dependent child. Therefore, because she failed to file a motion requesting legal custody of K.S. prior to the dispositional hearing, Crystal lacks standing to appeal the trial court's decision granting permanent custody of K.S. to the agency. As a matter of consequence, we dismiss appellate case number 3-21-01. *See In re R.V.*, 6th Dist. Lucas No. L-10-1278, 2011-Ohio-1837, ¶ 54.

{¶19} Turing to A.J.'s case, based on our review the evidence provided to this court, because Crystal (as a non-parent) failed to file a motion requesting legal custody of A.J. prior to the dispositional hearing, we conclude that Crystal lacks standing to appeal the trial court's decision granting permanent custody of A.J. to the agency. *See In re L.T.*, 12th Dist. Butler No. CA2016-03-048, 2016-Ohio-5272, ¶ 23, citing *In re J.P.*, 12th Dist. Butler Nos. CA2015-08-160 and CA2015-08-161, 2016-Ohio-7, ¶ 8 (concluding that a nonparent seeking legal custody of a child must

file a motion for legal custody under to R.C. 2151.353(A)(3)), *In re Neff*, 3d Dist. Allen No. 1-78-9, 1978 WL 215720, *2 (June 14, 1978), and *In re A.L.A.*, 11th Dist. Lake Nos. 2011-L-020 and 2011-L-021, 2011-Ohio-3124, ¶ 2. Thus, since we have determined that Crystal lacks standing to appeal the trial court's decision granting permanent custody of A.J. to the agency, we dismiss appellate case number 3-21-03.

{¶20} Having disposed of K.S.'s and A.J.'s cases, we turn to G.J.'s case. As a preliminary concern, under her second assignment of error, Crystal argues that the trial court erred by failing to place G.J. in the legal custody of a third party, Danise Bower ("Bower"), Crystal's former mother-in-law. "[A] parent has standing to challenge the trial court's failure to grant a motion for legal custody filed by a non-parent because the court's denial of that motion led to a grant of permanent custody to the children services agency, which impacted the residual rights of the parent." *In re J.J.*, 9th Dist. Summit No. 21226, 2002-Ohio-7330, ¶ 36. "The parent has standing to challenge *only* how the court's decision impacted the parent's rights, however, not the rights of the third party." (Emphasis added.) *Id.* Therefore, Crystal's challenge is limited to whether the trial court's decision to terminate her parental rights was proper. *See id.* For the reasons that follow, we conclude that the trial court did not err by granting permanent custody of G.J. to the agency.

{¶21} In G.J.'s case, Crystal argues that the trial court's decision to sever parental rights "was not supported by clear and convincing evidence, was not in the best interest of [G.J.]. and was, in fact, against the manifest weight of the evidence." (Appellant's Brief at 9). In other words, Crystal does not challenge the trial court's R.C. 2151.414(B) finding; rather, Crystal challenges only the trial court's determination that granting permanent custody of G.J. to the agency is in his best interest.[6]

{¶22} Even though G.J. was in the temporary custody of the agency for fewer than 12 months of a consecutive 22-month period as discussed under R.C. 2151.414(D)(1)(c), our review of the record reveals competent and credible evidence supporting the trial court's factual findings relevant to the best-interest factors set forth under R.C. 2151.414(D).

{¶23} Regarding the best-interest fact under R.C. 2151.414(D)(1)(a), the trial court found that G.J. is "thriving in [his] present foster home placement [and has] bonded with the foster parents and children contained in" the home and that removal "would be detrimental." (Case No. C2205142, Doc. No. 15). There was

---

[6] Under R.C. 2151.414(B), the trial court is instructed to consider the availability of relatives of the *child* who have come forward to accept custody of the child, but that duty does not "include the requirement that the juvenile court find by clear and convincing evidence that no suitable relative was available for placement. The statute requires a weighing of all the relevant factors." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 64. Rather, "R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.*

clear and convincing evidence presented at the permanent-custody hearing supporting the trial court's findings. In particular, G.J.'s foster mother, Rachel P. ("Rachel"), presented testimony regarding G.J.'s developmental progress and his relationship with her family. (Feb. 2, 2021 Tr. at 82-83). Moreover, Rachel testified that she provided a report to the trial court from G.J.'s pediatrician, which the trial court noted that G.J.'s pediatrician commented that G.J. "formed a stable attachment to his foster parents and is currently thriving, and [the doctor is] concerned that [G.J] may be traumatized if [G.J. is] removed from this family." (*Id.* at 87). (*See* Case No. C2205142, Doc. No. 13). She further testified that she and her husband are willing to adopt G.J. (*Id.* at 79-80).

{¶24} Nevertheless, Crystal contends that this court should discount Rachel's testimony since it "may have been tainted by [her] desire to adopt [G.J.]." (Appellant's Brief at 18). However, this court must defer to the trial court's findings as it is "best suited to view the witnesses, observe their demeanor, and weigh evidentiary and witness credibility." *In re E.W.*, 6th Dist. Lucas No. L-18-1024, 2018-Ohio-2863, ¶ 17.

{¶25} Moreover, contrary to Crystal's assertion that the trial court failed to ascertain or consider G.J.'s wishes, "either as expressed by the child or through the child's guardian ad litem," the trial court properly considered the best-interest factor under R.C. 2151.414(D)(1)(b). Indeed, R.C. 2151.414(D)(1)(b) directs the trial

court to consider the "wishes of the child * * * with due regard for the maturity of the child." Here, the trial court appears to have duly regarded G.J.'s young age, noting that the original complaint in his case was filed shortly after his birth in 2018. *Compare In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 20 ("Regarding R.C. 2151.414(D)(1)(b), the trial court appears to have duly regarded A.M.'s young age, noting her date of birth is March 19, 2013, making her 19 months old at the time of the trial court's decision"). Likewise, the GAL's report (which recommends awarding permanent custody of G.J. to the agency) reflects that G.J.'s date of birth is August 22, 2018, making him 30 months at the time of the trial court's decision. (Case No. C2205142, Doc. No. 14). *See In re L.L.*, 3d Dist. Hancock No. 5-19-33, 2020-Ohio-1565, ¶ 29.

{¶26} Regarding the best-interest factor under R.C. 2151.414(D)(1)(d), the trial court found that "the best interest of [G.J.] would be served leaving [him where he is] because [he] would have finality, stability, resolution[,] permanency[,] and be in a drug-free environment." (Case No. C2205142, Doc. No. 15). "[A] legally secure permanent placement 'is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs.'" *In re P.*, 1st Dist. Hamilton No. C-190309, 2019-Ohio-3637, ¶ 42, quoting *In re K.W.*, 4th

Dist. Highland Nos. 17CA7 and 17CA8, 2018-Ohio-1933, ¶ 87, and citing *In re J.H.*, 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶ 95.

{¶27} Here, the record reveals clear and convincing evidence that Crystal is unable to provide a legally secure permanent placement. *See In re L.D.*, 1st Dist. Hamilton No. C-190470, 2019-Ohio-4990, ¶ 16 (noting that "persistent drug use, failure to complete case-plan services, and the lack of an appropriate family member to take custody of the child all indicate a parent's inability to provide a legally secure permanent placement"), citing *In re A.M.Z.*, 1st Dist. Hamilton Nos. C-190292, C-190317 and C-190326, 2019-Ohio-3499, ¶ 9. Specifically, the record reveals that G.J. not only tested positive for THC at birth but that Crystal continued a pattern of drug abuse throughout the pendency of the case. *See In re P.* at ¶ 41; R.C. 2151.414(E)(1). Further, the record reveals that Crystal failed to complete her case-plan service due to her continued drug abuse. *See In re P.* at ¶ 42.

{¶28} Additionally, the record demonstrates that no proposed alternatives to permanent custody could provide G.J. with a reliably stable, safe, and nurturing home environment. Even though the record demonstrates that Crystal suggested Bower as an alternative to permanent custody, it also reflects that she had negligible, if any, prior contact with G.J. Likewise, the record is completely devoid of any evidence demonstrating that Bower was a viable alternative to permanent custody despite the agency's assertion that a home-study evaluation had been completed. In

particular, aside from any evidence which would naturally flow from a home-study evaluation, there is no evidence reflecting Bower's criminal history, employment history, or health history. *See In re K.M.*, 3d Dist. Crawford No. 3-18-11, 2018-Ohio-3711, ¶ 36. Importantly, placement with Bower is untenable as it could result in G.J. being exposed again to Crystal's drug use which caused him to be removed from Crystal's custody in the first place. *See id.*

{¶29} Finally, regarding the best-interest factor under R.C. 2151.414(D)(1)(e), even though the record reflects that Crystal had "intermittent" contact with G.J., Crystal admitted that she abandoned G.J. *See* R.C. 2151.414(E)(10); (Feb. 2, 2021 Tr. at 40, 103).

{¶30} For the reasons above, we conclude that clear and convincing evidence supports the trial court's determinations under R.C. 2151.414 that it was required to and did make in granting permanent custody of G.J. to the agency. Moreover, the trial court's decision to grant permanent custody of G.J. to the agency is not against the manifest weight of the evidence, as Crystal argues. Consequently, the trial court did not err by granting permanent custody of G.J. to the agency.

{¶31} Crystal's first and second assignments of error are overruled.

{¶32} Having found no error prejudicial to the appellant herein in the particulars assigned and argued as to appellate case number 3-21-02, we affirm the judgment of the trial court. Having found appellant lacks standing to assert the

Case Nos. 3-21-01, 3-21-02 and 3-21-03

particulars assigned and argued as to appellate case numbers 3-21-01 and 3-21-03,

we dismiss those cases.

*Judgment Affirmed in 3-21-02,*
*Appeals Dismissed in 3-21-01 and 3-21-03*

**WILLAMOWSKI, P.J. and MILLER, J., concur.**